UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
HUDSON FURNITURE, INC., and BARLAS                          :
BAYLAR,                                                      :
                                                            :
                    *Plaintiffs*,                           :
                                                            :
         -*against*-                                        :          20 Civ. 4891 (PAC)
                                                            :
ALAN MIZRAHI d/b/a ALAN MIZRAHI                             :
LIGHTING and LIGHTING DESIGN                                :          **OPINION & ORDER**
WHOLESALERS INC.,                                           :
                                                            :
                    *Defendants*.                           :
                                                            :
                                                            :
                                                            :
                                                            :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

     Plaintiffs Hudson Furniture and Barlas Baylar ("Plaintiffs" or "Hudson") have moved against

Defendant Alan Mizrahi and his company Lighting Design Wholesalers, Inc. (LDW) (together

"Defendants" or "Mizrahi") for a preliminary injunction pursuant to Rule 65.  Plaintiffs proceed

on the basis that Mizrahi is distributing, offering for sale and/or selling counterfeits of Plaintiffs'

lighting designs, which infringe on several of Hudson's design patents.  According to Hudson,

Mizrahi has taken copyrighted images of Hudson's products and displayed them on his websites

thereby deceiving consumers into believing that Hudson is the source of the offending products.

Hudson brings various copyright infringement claims, under 17 U.S.C. § 101, trademark

infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), unfair competition

and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

patent infringement, under 35 U.S.C. § 289.

Defendants oppose the preliminary injunction claiming Hudson has not shown irreparable harm as there was no showing of consumer confusion or that Hudson was losing customers. (Def. Opp. at 20, Dkt 47.)  Additionally, Defendants urge that nothing in the injunction application established that Defendants were selling counterfeit knockoffs of Hudson's designs. (*Id.*)  Defendants have also moved to dismiss the complaint, under Rule 12(b)(2), for lack of personal jurisdiction on the basis that the alternative service was improper.

The Court denies Defendants' motion to dismiss for lack of personal jurisdiction.  For the reasons below, the Court grants the motion for a preliminary injunction in part against Mizrahi and Lighting Design Wholesalers, Inc.

## BACKGROUND

### A.      Findings of Fact

Plaintiff Hudson Furniture is a manufacturer, designer, and retailer of lighting designs and furniture products.  (Baylar Dec. ¶ 4, Dkt. 42).  Plaintiff Barlas Baylar is the CEO and Creative Director of Hudson Furniture, which was founded in 2004.  (*Id.* at ¶ 1).  Hudson's lighting designs are promoted in the United States through Hudson's website, via online and printed catalogs, interior design publications, and through contractors, architects, and interior designers. (*Id.* at ¶ 10).

Hudson owns design patents for several of its designs, and several trademarks.  (*Id.* at ¶¶ 19-20). Hudson uses the registered trademarks HUDSON FURNITURE and BARLAS BAYLAR (the "Hudson Registered Marks")[1] as house marks in connection with retail store services and lighting products.  (Baylar Dec. ¶¶ 11-12 (Dkt. 10), Ex. 1).  Hudson has also developed

---

[1] U.S. Trademark Reg. Nos. 4,597,499 (the " '499 Registration") and 4,046,353 (the " '353 Registration") cover the HUDSON FURNITURE trademark for lighting fixtures.  The BARLAS BAYLAR trademark is the subject of U.S. Trademark Reg. No. 4,403,798 (the " '798 Registration"), which covers the mark for lighting fixtures.  (Baylar Dec. ¶¶ 11-12, Ex. 1).

distinctive trademarks for each of its lighting designs, including, *inter alia*, PANGEA, LA

CAGE, VALIANT, (collectively the "Hudson Unregistered Marks").  (*Id.* at ¶¶ 13-14).  Hudson

advertises its products on the internet and in print, using copyrighted photographs of its designs

and product catalogs.  (*Id.* at ¶¶ 15-17; Ex. 2).  Hudson spends significant time, money, and

effort staging and photographing its designs for the website and Hudson catalogs.  (*Id.* at ¶ 16).

Hudson has also obtained design patents for many of its lighting designs and owns all rights,

titles, and interest in the U.S. Design Patents (collectively the "Hudson Patents").  (*Id.* at ¶¶ 19-

22).  The chart below depicts certain design patents obtained by Hudson:

| Title | Representative View of Claimed Design | US Design Patent |
|---|---|---|
| "Chandelier" (a/k/a LA CAGE) |  | Patent D697,252 |
| "Ceiling Light" (a/k/a BRITANICA) |  | Patent D794,862 |
| "Light Fixture" (a/k/a/ VALIANT) |  | Patent D858,857 |

(*Id.* at ¶ 20; Ex. 3).

Defendant Mizrahi is an individual that operates and controls the activities of his namesake companies and websites including, <alanmizrahi.net> and <alanmizrahilighting.net>.  (*See* Hines Dec. ¶ 29, Dkt. 20; Mizrahi Dec. ¶¶ 18, 26, Dkt. 45).  Mizrahi's websites list a New York Headquarters at 140 Bowery Street New York, New York.  (Hines Dec; Ex. J, Dkt 20-10)  Defendant Lighting Design Wholesalers, Inc. ("LDW") is a corporation organized and existing under the laws of New York and lists the same corporate address at 140 Bowery Street, New York, New York.  (Hines Dec. ¶ 5, Ex. 1, Dkts. 50, 50-1).  The New York Department of State website for LDW lists the corporation as "active" and designates "Alon Mizrahi" as the recipient of process.  (*Id.*)

Mizrahi is posting numerous infringing photos of Hudson's products on his websites <alanmizrahi.net> and <alanmizrahilighting.net>, and on vendor pages on MyShopify.com and Facebook Marketplace.  (*Id.* at ¶¶ 15-16, 25).  Hudson submitted numerous pictures of its lighting designs with the corresponding infringing images posted on Mizrahi's website.  (*Id.* at ¶ 25).  The lighting products on Mizrahi's website (e.g., PANGEA, LA CAGE, VALIANT) use Hudson's trademarks.  (*Id.* at ¶ 26).  Defendant Mizrahi's website says certain products were designed by Hudson Furniture and Barlas Baylar and include photographs of Baylar himself creating a fictitious association with Hudson and confusing consumers about the origin, sponsorship, or endorsement of Defendants' products.  (*See id.* at ¶ 27).  Plaintiffs never consented to the use of its name or photograph on Mizrahi's websites.  (*Id.* at ¶ 29).  Hudson does not and has never sold its products through Defendants.  (*Id.*)  Hudson has never licensed or given consent for Defendants to use any of Hudson's copyrighted images, Hudson Registered Marks, Hudson Unregistered Marks, or the Hudson patents.  (*Id.*)

Hudson regularly monitors internet activity to look for vendors who sell inferior 'knock-offs' of Hudson products.  (*Id.* at ¶ 23).  In the course of that monitoring, Hudson became aware of <alanmizrahi.net> and <alanmizrahilighting.net>.  (*Id.*)  Additionally, in June 2020, Hudson discovered that a third-party, Jennifer Welch Designs, posted what appeared to be a Valiant chandelier on its social media account that Hudson did not sell.  (Supp. Baylar Dec. ¶¶ 10-12; Ex. B).  Hudson inquired about the source of the chandelier and Jennifer Welch Designs provided documents showing it purchased the lighting fixture from Mizrahi.  (*Id.*)  Hudson submitted an email and invoice showing that Mizrahi was selling the Hudson "VALIANT" lighting design to Jennifer Welch Designs.  (*See* Ex. L, Dkt. 20-12; Supp. Baylar Dec. ¶¶ 10-12; Ex. B).  Jennifer Welch Designs also provided to Hudson a copy of the commercial invoice from Mizrahi for the sale of the chandelier.  (*Id.*).

Plaintiffs represent that the sale of infringing lighting products both (1) causes them to suffer lost sales and (2) damages their reputation for quality.  (Baylar Dec. ¶ 30).  Plaintiffs represent that consumers will be confused as they will believe the products sold by Mizrahi are genuine Hudson fixtures, and that the inferior products with Hudson branding will tarnish and diminish Hudson's reputation for quality and will result in loss of customer goodwill.  (*Id.*; Pls. Mem. at 20).  Hudson also adds that manufacturing and selling lighting fixture implicates consumer safety; it has no way to control the quality or safety of the products Mizrahi is selling under the Hudson name.  (Baylar Dec. ¶ 30; Pls. Reply, at 11, Dkt. 49).

### B.   Procedural History

On June 25, 2020, Plaintiffs filed a complaint in this action.  (Dkt. 1). The next day, Plaintiffs filed a motion for a preliminary injunction.  (Dkt. 8)  Before seeking leave for alternative service, Plaintiffs reached out to Mizrahi's United States counsel on June 29, 2020 to

5

see if he would consent to accept service on Mizrahi's behalf.  (Hines Dec. ¶ 11, Dkt. 20).

Mizrahi's counsel spoke with Mizrahi and informed Plaintiffs that he was not authorized to

accept service.  (*Id.* at ¶ 12).  On July 1, 2020, Plaintiffs filed an *ex parte* motion for leave to

effect alternative service seeking to serve Defendant Mizrahi, believed to reside in Austria, via

RPost email and to serve his United States counsel by mail, who had filed papers on Mizrahi's

behalf a couple of months earlier in a separate action in the Southern District of New

York.  (Dkt. 18).  The Court authorized alternative service on July 7, 2020.  (Dkt. 24).

Additionally, Plaintiffs effected valid service on Defendant LDW under New York Corporations

Law § 306 on July 6, 2020.  (Dkt. 27).  After receiving service of the complaint and motion

papers, Defendants requested an extension for the time to answer the motion for a preliminary

injunction and the Complaint, which the Court granted.  (Dkt. 36).  The Court entered an order to

show cause on August 5, 2020, and held a hearing on August 17, 2020.[2]

## DISCUSSION

### I.    Personal Jurisdiction

Mizrahi moves to dismiss the complaint, under Rule 12(b)(2), for lack of personal

jurisdiction on the grounds that alternative service by email on Mizrahi and by mail on his US

counsel was improper.

#### A.    Legal Standard

Rule 4(f) provides that individuals in foreign countries--such as Mizrahi--may be served

(1) "by any internationally agreed means of service that is reasonably calculated to give notice,

such as those authorized by the Hague Convention"; (2) "by a method that is reasonably

calculated to give notice," including "as the foreign authority directs in response to a letter

---

[2] Plaintiffs posted bond in the amount of $10,000 as per the Court's order pursuant to Federal Rule of Procedure 65. The bond requirement is continued.

rogatory or letter of request"; and (3) "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f).  "As long as [service is] court-directed and not prohibited by an international agreement," service of process may be ordered under Rule 4(f)(3) even if the method of service is in contravention of the laws of the foreign country.  *Freedom Watch, Inc. v. Org. of the Petrol. Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014); *Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19CV1517 (DLC), 2019 WL 6647804, at *1 (S.D.N.Y. Nov. 19, 2019).  On July 7, 2020, the Court authorized alternative service on Defendant Mizrahi, believed to reside in Austria[3], which had not yet ratified the Hague Service Convention.  (Order, Dkt. 24).

"The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."  *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (internal quotation marks omitted).  "Service under subsection [4(f)](3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant."  *Advanced Aerofoil Techs., AG v. Todaro*, No. 11 Civ. 9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (internal quotation marks omitted).  Allowing alternative means of service pursuant to Fed. R. Civ. P. 4(f)(3) is permissible so long as it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process."  *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009).

---

[3] As of July 7, 2020, Austria had not ratified the Hague Service Convention. *See* HCCH, *Status Table*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17. Mizrahi's residency was not clear. Plaintiffs believed Mizrahi to be an resident of Austria based upon a declaration submitted in another case in 2018, but noted that declaration was notarized in Spain further obfuscating Mizrahi's actual residence.  (Hines Dec. ¶¶ 19-20). Additionally, an affidavit submitted from a Customs and Border Protection officer stated that Mizrahi was a citizen of Israel.  (*Id.* at ¶ 18; Ex. 7).

### B.     Service of Process by Alternative Means on Mizrahi was Proper

The Court denies Mizrahi's motion to dismiss for lack of personal jurisdiction.  Mizrahi

identifies no international agreement, which prohibits service on him by email.  Austria, where

Mizrahi claims to reside, had not ratified the Hague Service Convention at the time of service[4];

the Court authorized alternative service by email.  Thus, the remaining question for the Court is

whether the service on Mizrahi by RPost email comports with due process.  That bar is met here

as Mizrahi engaged in online business and communicated by email, and the email addresses to

which the Court directed alternative service are advertised as contact points on his websites.  *See*

*Mattel, Inc. v. Animefun Store*, No. 18 CIV. 8824 (LAP), 2020 WL 2097624, at *5 (S.D.N.Y.

May 1, 2020) (denying motion to dismiss based on improper service holding alternative service

by RPost email on foreign defendants comported with due process where they engaged in online

business and communicated with customers through email); *Elsevier, Inc. v. Siew Yee Chew*, 287

F. Supp. 3d 374, 378 (S.D.N.Y. 2018) (same); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312

F.R.D. 329, 332 (S.D.N.Y. 2015) (holding service through email appropriate because "email

address in question is listed prominently on [defendant's] Internet homepage ... [,] [the

defendant] presumably relies at least partially on contact through [its email] to conduct overseas

business, and it is reasonable to expect [defendant] to learn of the suit against it through this

email address.").

Further, service on Defendant Mizrahi was effectuated here.  Hudson submitted

registered receipts from RPost confirming that the service emails and documents annexed thereto

were sent to, delivered to, and opened by twelve of the email addresses.  (*See* Hines Reply Dec.

at n.12 (Dkt. 50); Exs. 5-6).  Additionally, the RPost receipts indicate that three of Defendant's

---

[4] The Hague Service Convention is not yet in effect in Austria. *See* HCCH, *Status Table*, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17

email accounts (e.g.,alan.alanmizrahi@gmail.com; alan@alanmizrahi.net; and order@alanmizrahi.net) downloaded the service papers. (*Id.*) In addition, on July 1, 2020, before seeking leave for alternative service Hudson requested that Mizrahi's United States counsel accept service on behalf of Mizrahi, and informed counsel that if service was not accepted Hudson would seek leave from the Court for alternative service. (Dkt. 32). Mizrahi's counsel, Mr. Greener, responded via email that he had spoken with Mizrahi who instructed Mr. Greener not to accept service. (*Id.*) Following the Court's authorization of alternative service, Hudson also served Mizrahi's counsel who confirmed that he had received the service papers, spoken to Mizrahi, and had reached out to Hudson on behalf of Mizrahi to discuss a potential settlement. (Dkt. 30). Accordingly, service by RPost email has apprised Mizrahi of this lawsuit and given him an opportunity to register his objections, which he has raised in his declaration in opposing the preliminary injunction. Thus, the service comports with constitutional notions of due process.

## II.    Conclusions of Law

### A.    Preliminary Injunction Standard

A "party seeking a preliminary injunction must demonstrate (1) irreparable harm in the absence of the injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.,* 375 F.3d 190, 192 (2d Cir. 2004) (internal quotation marks and citation omitted). Before issuing an injunction, a court must consider "the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Id.* "Finally, the court must ensure that the public interest would not be

disserved by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotation omitted).

### B.    Likelihood of Success on Merits

#### 1.    Copyright Infringement

"To prevail on their claim of copyright infringement, plaintiffs must establish (1) ownership in a valid copyright, and (2) infringement of the copyright by defendant." *CJ Prods.LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 142 (E.D.N.Y. 2011) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "Infringement" means a violation of any of the copyright holder's five statutory rights in its original work, including the exclusive right to distribute the work.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010).

Plaintiffs have submitted sufficient evidence to establish that they are likely to succeed on the merits of a copyright infringement claim.  Plaintiffs have submitted evidence that they own or control valid copyrights of the relevant images.  (Baylar Dec. ¶ 5.)  Hudson has also submitted evidence that Mizrahi, without permission from Plaintiffs, posted and hosted unauthorized copies of Hudson's images on the Mizrahi websites to advertise its sale of unauthorized reproductions of Hudson's lighting fixtures.  (*See e.g.*, Baylar Dec. ¶ 25.)  Mizrahi does not deny unauthorized use of Hudson's images.  According to Mizrahi, if Hudson had sent a cease and desist letter he would have removed images of Hudson's fixtures.  (Mizrahi Dec. ¶ 26.)  The images posted by Mizrahi create a fictitious association with Hudson and confuse consumers about the origin, sponsorship, or endorsement of Mizrahi's products.

### 2.    Trademark Infringement

On this motion for a preliminary injunction, Plaintiffs seek relief for trademark infringement,

false designation of origin, and unfair competition under Section 32 and Section 43(a) of the

Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a).

For Hudson to prevail on its Claims, it must satisfy two elements, namely: (i) that its Hudson

Furniture and Barlas Baylar marks are valid and entitled to protection, and (ii) Defendant is using

the Hudson Furniture and Barlas Baylar marks in a manner that is likely to create consumer

confusion. *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277

(S.D.N.Y. 1998) (The same standard governs Section 32 and 43(a)(1)(A) claims; granting

preliminary injunction); *3M Co. v. Performance Supply, LLC*, No. 20-cv-02949 (LAP) (KNF),

2020 WL 2115070, at *8 (S.D.N.Y. May 4, 2020) (same).  To prevail in a trademark

infringement action under 15 U.S.C. § 1114(1), plaintiffs must show: "(1) it has a valid mark that

is entitled to protection under the Lanham Act, ... (2) the defendant used the mark, (3) in

commerce, (4) in connection with the sale or advertising of goods or services, (5) without the

plaintiff's consent," and (6) the "defendant's use of that mark is likely to cause confusion as to

the affiliation, connection, or association of defendant with plaintiff, or as to the origin,

sponsorship, or approval of the defendant's goods, services, or commercial activities by

plaintiff." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005).

In evaluating whether a trademark owner claiming infringement has satisfied its burden of

showing a likelihood of consumer confusion, courts in this Circuit routinely apply the non-

exclusive multi-factor analysis developed by Judge Friendly in *Polaroid Corp. v. Polarad

Electronics Corp.,* 287 F.2d 492 (2d Cir. 1961).  These factors include: (1) the strength of the

mark, (2) the similarity of the two marks, (3) the proximity of the products, (4) the likelihood of

bridging the gap, (5) actual confusion, (6) defendant's good faith in adopting its mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers.  *See, e.g., Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 116 (2d Cir. 2006) (listing the *Polaroid* factors).  The *Polaroid* Factors apply, but if counterfeit products are involved a step-by-step examination is not necessary because counterfeit marks are inherently confusing. *See Fendi Adele S.R.L. v. Filene's Basement, Inc.* 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010).

Plaintiffs have submitted sufficient evidence to establish that they are likely to succeed on the merits of a trademark infringement claim.  Hudson does not and has never sold its products through Mizrahi. Hudson has submitted evidence that they own or are the exclusive licensee to the registered trademarks associated with the lighting designs.  (*See* Baylar Dec. ¶ 26; Ex. 1).  The '499, '353, and '798 Registrations for the Hudson Furniture and Barlas Baylar marks are valid and incontestable.  *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 277 (S.D.N.Y. 1998) (Certificate of registration of a trade or service mark issued by the United States Patent and Trademark Office is prima facie evidence of the validity of the registered mark).

Additionally, Hudson is likely to establish the balance of the relevant *Polaroid* factors weigh in its favor.  Hudson submitted evidence that Mizrahi used Hudson's marks and Baylar's name and likeness to sell lighting fixtures that were not supplied by Hudson to consumers on his websites alanmizrahi.net and alanmizrahilighting.net.  (Baylar Dec. ¶ 27; Supp. Baylar Dec. ¶ 10).  Thus, Mizrahi's use of Hudson's marks creates a fictitious association with Hudson and is likely to deceive consumers about the origin, sponsorship, or endorsement of Mizrahi's products. Further, the combination of Hudson Registered marks and unregistered marks (e.g., Lotus, Valiant, Pangea) as applied to lighting fixtures is distinctive and arbitrary rather than generic.

Both companies engage in sales of lighting fixtures, thus establishing product proximity and competitiveness, and eliminating any question of "bridging the gap." *See*, *e.g.*, *Mister Softee, Inc. v. Tsirkos,* 2014 WL 2535114, *5 (S.D.N.Y. June 5, 2014) (issuing preliminary injunction and finding that the third and fourth *Polaroid* factors weighed in favor of plaintiff where both parties sold ice cream). Hudson proffered evidence of actual consumer confusion by submitting emails and an invoice depicting Mizrahi selling the "Valiant" chandelier to a consumer. Defendants offer no countervailing evidence.[5] Because Mizrahi is using Hudson marks, without permission, to sell lighting fixtures to consumers that are unauthorized reproductions of Hudson products the Court finds it is likely to cause consumer confusion. Further, Hudson cannot control whether the products that Mizrahi is offering for sale adhere to Hudson's quality-control and consumer-safety standards. *3M Co.*, 2020 WL 2115070, at *11 (explaining the seventh *Polaroid* factor concerns "whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality" and weighs in favor of plaintiff where the plaintiff's reputation for high quality services is placed beyond its control).

### C.   Irreparable harm

A showing of irreparable harm is a prerequisite for issuing a preliminary injunction. *NYP Holdings v. New York Post Pub. Inc.*, 63 F. Supp. 3d 328, 335 (S.D.N.Y. 2014). The Second Circuit has instructed that in a copyright case courts "must not adopt a 'categorical' or 'general' rule or presume that the plaintiff will suffer irreparable harm…Instead, the court must actually

---

[5] Mizrahi claims that he submitted documents showing that his company has had a relationship with Hudson since 2013.  (*Id.* at ¶ 24).  Mizrahi, however, submits, quotes and requests for pricing (not invoices) and two emails prepared by Hudson were emailed to a Dan Eastman at <DanEastman2022@yahoo.com> and <DanEastman2022@gmail.com>.  Nothing Mizrahi submitted shows reflect a sale or any other transaction with Hudson.  On reply, Hudson, indicates it has located in its records six requests for pricing from a Dan Eastman none of which resulted in a sale of Hudson's products. (Supp. Baylar Dec. ¶ 8; Ex. A).

consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger*, 607 F.3d at 80.  The same standard for a preliminary injunction applies in cases for trademark infringement.  *See Pearson Educ., Inc. v. Labos*, No. 19 CIV. 487 (CM), 2019 WL 1949820, at *4 (S.D.N.Y. Apr. 23, 2019).

In general, "[h]arm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012).  Post-*Salinger*, courts have found irreparable harm in copyright cases where the infringement "would substantially diminish the value" of the work, "losses would be difficult to measure," and "monetary damages would be insufficient to remedy the harms." *Id.* at 285.

In trademark cases, "[i]rreparable harm exists ... when the party seeking the injunction shows that it will lose control over the reputation of its trademark ... because loss of control over one's reputation is neither calculable nor precisely compensable." *U.S. Polo Ass'n Inc., v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d. Cir. 2013) (internal quotation omitted).  The loss of reputation and goodwill constitutes irreparable harm.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004).  "Thus, it will often be the case that a party's demonstration of a likelihood of success on a trademark claim will also show a threat of irreparable harm." *Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F. Supp. 2d 211, 227 (W.D.N.Y. 2012).  Finally, "a particularly strong likelihood of confusion"—which is presumed in counterfeiting cases, "should weigh in favor of finding irreparable injury." *NYP Holdings*, 63 F. Supp. 3d at 341.

Plaintiffs have shown they would be irreparably harmed in the absence of an injunction with regard to their claims.  Mizrahi's continued sale of lighting fixtures causes Hudson to suffer lost sales of its authentic lighting products.  *See e.g.*, Supp. Dec. Baylar ¶ 12; Ex. B (showing receipt for Valiant lighting fixture sold by Mizrahi to Jennifer Welch Designs).  Additionally, Hudson has established that the sale of unauthorized replicas of its lighting fixtures causes harm to their brand, reputation for craftsmanship, and consumer goodwill because customers seeking to purchase Hudson lights will be misled into purchasing inferior copies, which may be offered at lower prices on Mizrahi's websites.  (Supp. Dec. Baylar ¶¶ 8-9).  Moreover, consumers will not be able to discern that they are purchasing unauthorized products because Mizrahi is using Hudson's copyrighted images and marks to create a fictitious association and deceive consumers.  (Baylar Dec. ¶ 27).  Without an injunction, Hudson also cannot control whether the products that Mizrahi is offering for sale adhere to Hudson's quality-control and consumer-safety standards.  Thus, Hudson has established that Mizrahi's sales cause harm to their brand, consumer confusion, and loss of goodwill because customers seeking to purchase Hudson lighting fixtures will often be misled into purchasing Mizrahi products.  This constitutes irreparable harm.  *See Pearson*, 2019 WL 1949820, at *4 (holding harm to brand, consumer confusion, and loss of sales was irreparable harm); *see also Mister Softee, Inc. v. Tsirkos*, No. 14-cv-1975-LTS-RLE, 2015 WL 7458619, *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services").

### D.    Public Interest

There is nothing in the record to indicate that issuing a preliminary injunction in this case would harm the public interest in any way.

The Second Circuit has determined that there is a "strong interest in preventing public confusion."  *ProFitness Physical Therapy Ctr. v. Pro–Fit Orthopedic & Sports Physical Therapy*

*P.C.,* 314 F.3d 62, 68 (2d Cir. 2002). Because Plaintiffs have demonstrated that the injunction sought will stop consumers from being confused by Mizrahi's use of Hudson's marks, this injunction is in the public interest.

## **CONCLUSION**

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons stated, Plaintiffs' motion for a preliminary injunction is granted in part.[6] A separate Preliminary Injunction Order will be entered.

Dated: New York, New York         SO ORDERED
        September 1, 2020

                                    _____
                                      PAUL A. CROTTY
                                      United States District Judge

---

[6] The Court denies the injunction as to the patent design claim, under 35 U.S.C. § 289, because Plaintiffs do not submit sufficient evidence for the Court to examine the design and infringing design side-by-side.